# INTERURBAN CONSTRUCTION COMPANY v. HARRY E. HAYES, Appellant.

### Division Two, November 21, 1905.

1. **RECEIPT: Pledge: Explanation.** Where the receipt acknowledging the deposit of certain bonds contains a further clear contract of pledging, that part of the instrument which recites the receipt and deposit cannot be varied or contradicted by oral explanations showing that the bonds were deposited with some other person, for that would be to destroy and contradict the contract of pledging.

2. ———: **When May Be Explained.** A receipt which contains stipulations which amount to a contract cannot be contradicted or varied by parol evidence, but is governed by the law of contracts.

3. ——: Pledge: Oral Explanation: Case Stated. The contract
between plaintiff construction company and one Alexander, to
whom plaintiff had sublet the work of constructing a part of
an electric railway, expressly provided that the bonds of the
railway company placed in the hands of the construction com-
pany as security for the work were to be pledged either to Al-
exander, or to some responsible person designated by him, as
security for funds for labor and material for the construction of
the work under the contract. The bonds were placed in the
hands of the defendants, who acknowledged the receipt of the
same and in the same paper recited that the said
bonds were to be held by defendants "as collateral and to
secure" them "for advances and loans made in pur-
suance" of the contract between plaintiff and Alexander,
the defendants "to hold said bonds according to the
provisions of said contract." The defendant took Alexan-
der's notes for $80,000 and took the notes and bonds to a bank
and obtained from the bank $69,591.52, the bank charging a bo-
nus of $2,900, and the defendants a commission of $2,000 and $4,-
000 for the guaranteeing the notes. The notes not being paid
when they became due, plaintiff had to take them up to keep
the bonds from being sold. The contract between plaintiff and
Alexander provided that he was to receive fifteen per cent, as
his profit, in addition to the cost of the work done by him if he
completed the work assigned to him, which he failed to do, and
plaintiff sues for the difference between the $69,591.52, the cost
of the work actually done by Alexander, and the amount repre-
sented by his notes, and defendants claim that they are entitled
to be compensated for their commission out of the fifteen per
cent profit which Alexander was to receive if he finished the
work. *Held*, that it was not competent to contradict the plain
pledge contained in the receipt by parol evidence showing that
the deposit of the bonds was made with the bank instead of
with defendants.

4. ——: Interpretation of Contract: Commissions: Bonus. The
said contract between plaintiff and Alexander stated that "said
bonds are to be pledged as security for funds for labor and ma-
terial in the work under this contract" to the said Alexander,
"or any responsible person whom he may designate, until said
road is completed." *Held*, that this provision was not enlarged
by a subsequent clause which provided that "in the event the
said Alexander shall fail to pay all sums contracted for by him
for funds to pay for labor and material for said work" the plain-
tiff "shall have the right to pay such sums and redeem said
bonds from any pledge of same he may have made hereunder;"
and that the two clauses taken together did not authorize the
pledging of said bonds to pay defendants $4,000 for guarantee-

ing the notes, or $2,000 in commissions for loaning Alexander the money on the notes made to defendants by him or for obtaining the money thereon from a bank, or to pay the bank a bonus of $2,900 for advancing money on the notes; but, said contract authorized the bonds to be pledged only to secure money with which to pay for the construction of the work and for any other use of the bonds by defendants they are liable to plaintiff.

5. ————: ————: ————: **Construction of Contract: Intention.** All parts of a written instrument are to be construed together and brought into harmony, so that every part may have effect according to the general intention of the parties apparent from the instrument regarded as a whole.

6. **PLEDGE: Responsibility of Pledgee: Conversion: Innocent Holder.** Where bonds are deposited with a pledgee under a written contract specifically limiting the purposes for which they may be used by such pledgee, he is responsible, as for conversion, for any wrongful use of them for any other purpose. And in a suit against him by the company which authorized the pledge and paid the notes made to the pledgee, for the difference between the amount of the money rightfully authorized by the pledge and the amount which the pledgee claims, he cannot be permitted to show that the bank from which he secured the money on the notes made to him by using the bonds as security, was an innocent holder for value of the bonds so transferred to it.

7. ————: **Conversion: Estoppel.** Mere knowledge on the part of the pledgor of the wrongful use by the pledgee of bonds deposited with him for a specific purpose, unless he by some act or conduct consented to and ratified such wrongful use, cannot be held to be an estoppel. On the contrary, he has the right to assume that the pledgee will make good any wrongful appropriation of the pledged funds.

8. ————: ————: **Waiver.** Knowledge on the part of the pledgor that the pledgee, at the time the pledge was made, intended to use the pledged funds, and was using them, for purposes other than those specified in the written pledging contract, might raise the issue of waiver, but not of estoppel.

9. **SET-OFF: Privity: Assignment.** Where there is no privity between the plaintiff pledgor and defendant pledgee or a third person for whom the pledgee obtained money by using the pledged funds as security, the defendant is not entitled to set-off against plaintiff's claim against him for a wrongful use of the pledged funds any claim he may have against such third party for commissions for loaning the money or for his guaranty in obtaining

the money for such third person.  To entitle defendant to such set-off there must be an assignment by such third party of his claim against plaintiff.

10.  **PAYMENT: Voluntary: Redeeming Pledge of Another.**  If a party in order to protect his interests and rights in property makes a payment, although not compelled by any legal force to make it, yet if he fails to make it the result would be a loss of his property rights and interests, the payment is, in legal contemplation, nothing less than a compulsory payment.  And where a construction company, in the rightful possession of railway bonds, places them in the hands of a subcontractor to be used by him in securing funds to prosecute the construction work, and he pledges them to secure his notes given for money used by him for that purpose, and the notes are not paid when due, the payment of those notes by the construction company in order to redeem the bonds, which in amount far exceeded the amount of the notes, was not voluntary.  And where the construction company was required, in redeeming said bonds, to pay a sum in excess of the amount which went into the construction of the road, to which uses the pledging contract limited the pledge, it is entitled to recover from the pledgee such excess.

11.  **EVIDENCE: Copy of Letter.**  Where a plaintiff testifies that he has not in his possession a letter mailed to defendant and that he received an answer to the letter, his copy of the letter may be admitted in evidence.

12.  **TORT: Action Against Partners.**  An action for the wrongful conversion of bonds deposited with a partnership by plaintiff and a misappropriation of the funds realized from such bonds which results in injury to plaintiff, is one sounding in tort, and all the partners are joint tortfeasors, and may be jointly and severally liable for the injury.  And this is true, although the duties of the firm and the misappropriation of the funds may be shown by written contracts.

13.  ———: **Amount of Damages: Pledge: Misapplication of Funds.**  Where the pledgee of bonds placed in his hands as security for money to be used for a specific purpose uses them for an unauthorized purpose, he is liable for the damages the owner of the bonds actually sustains in redeeming them, and not merely for the amount the pledgee made out of the transaction in the way of unauthorized commissions or for guaranteeing the notes when placed by him with a bank.

Appeal from  St. Louis City  Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*Jones, Jones & Hooker* and *Edward A. Haid* for appellant; *Blandin, Rice & Ginn* of counsel.

(1) The court erred in overruling the demurrer to the evidence at the close of the plaintiff's case and at the close of the whole case, and in holding and instructing the jury upon the theory that under the terms of the Alexander contract the bonds could not be lawfully pledged to secure the commissions of W. J. Hayes & Sons, H. E. Hayes and the commissions and interest to Park National Bank. Railroad v. Thompson, 103 Ill. 201; Phila. v. Railroad, 133 Pa. St. 134; Haywood v. Perrin, 10 Pick. 228; Orr v. Rode, 101 Mo. 396; Knower v. Emerson, 9 Pick. 422; Borton v. Fitzgerald, 15 East 530; Pike v. Munroe, 36 Me. 309. (2) The court erred in refusing to submit to the jury whether or not the pledge was to the Park National Bank and not to Hayes; in assuming in the instructions that the pledge was to W. J. Hayes & Sons; in instructing the jury on this assumption that the defendant was liable to the plaintiff; and in holding that the defendant was conclusively bound by the receipt of March 4th and as though the bonds were pledged to W. J. Hayes & Sons, and in refusing to permit the defendant to show that the bonds were never in fact pledged with W. J. Hayes & Sons. Cole Co. v. Dallmeyer, 101 Mo. 57; Aull v. St. Louis Trust, 149 Mo. 17; State ex rel. v. Branch, 112 Mo. 661. (3) The court erred in refusing a nonsuit and in authorizing a recovery without requiring the plaintiff to prove that the Park National Bank was an innocent holder for value without notice of the limitations upon the power of pledge contained in the Alexander contract and in the face of the direct proof that the bank had such notice and knowledge, instructing the jury that defendant was liable. (4) The court erred in admitting as against

the sole defendant, Harry E. Hayes, and over his objection, the receipt issued by W. J. Hayes & Sons, and in refusing a nonsuit and permitting a recovery, because the charge in the petition is that the bonds were pledged to W. J. Hayes & Sons. If this were so, then the liability of W. J. Hayes &. Sons is joint and not several. The rights and liabilities of the parties are governed by the laws of Ohio, where all of these transactions took place. There was no proof as to the law of Ohio, and the presumption is that the common law was in force there. Under the common law there could not be a several action against one of the partners for a partnership liability. Hill v. Combs, 92 Mo. App. 243; Kendall v. Hamilton, 4 App. Cas. 504; Mason v. Eldred, 6 Wall. (U..S.) 231; Batavia v. Tarbox, 38 Hun (N. Y.) 57; Crosby v. Jeroloman, 37 Ind. 264; 7 Am. and Eng. Ency. Law (2 Ed.), 101, 102; Lowe v. Electric Co., 47 Mo. App. 426; Lucas v. Ladew, 28 Mo. 342; Burdict v. Railroad, 123 Mo. 221; McPike v. McPike, 111 Mo. 216. (5) The court erred in refusing to give instruction 5 offered by the defendant to the effect that if the plaintiff, or its representative Sebastian, at the time of the pledge of the bonds or shortly thereafter, knew that Hayes had been paid, out of the proceeds of such pledge, various sums by way of commission, and used the remainder of the proceeds of the pledge to the extent of $69,000, then plaintiff was estopped from recovering the amount of such commissions or interest. The plaintiff was bound as much by knowledge communicated to other of its officers and directors as it was by the knowledge obtained by Sebastian. 1 Am. and Eng. Ency. Law (2 Ed.), 913, 1144; Merchants Bank v. Lovett, 114 Mo. 525. (6) The court erred in its rulings upon evidence in the following particulars: (a) The court erred in refusing to permit the defendant, when offered as a witness, to testify to the facts which would have established that the pledge of the bonds was made by Mr. Williams to the Park

Bank, and not by Mr. Williams to W. J. Hayes & Sons, as recited in the petition. There was, in fact, no pledge to Hayes. It is always competent to explain a receipt. (*b*) The court erred in admitting in evidence the stipulation, which stipulation, according to its terms, related to and was confined to the case of Harry E. Hayes v. Walter Alexander et al., pending in Cleveland, Ohio. (This stipulation refers to the cost of constructing the road after the Alexander contract was cancelled.) Nichols v. Jones, 32 Mo. App. 657; 20 Enc. of Pl. and Pr., 620; Hallman v. Bank, 12 Ala. 369; Wilkins v. Stidger, 22 Cal. 232; Ins. Co. v. Field, 53 Ill. App. 119; Carthage v. Buckner, 8 Ill. App. 152; Lake Co. v. Sutliff, 97 Fed. 270; Moffitt v. Witherspoon, 10 Ired. L. (N. Car.) 185; Harrison v. Baggar, 5 Litt. 250; Etling v. Scott, 2 Jelino 156.

*W. E. Fisse* for respondent; *Joseph S. Clark* of counsel.

(1) The Alexander contract limits the power to pledge to debts created to pay for labor and material. (2) The demurrer to the evidence was properly overruled, and defendant's instruction 2 was properly denied. (3) The "receipt" of March 4, 1901, given by Hayes & Sons constituted a contract whereby this firm became bound to apply all moneys advanced or obtained upon the security of the bonds in question, by or through them, exclusively to the discharge of claims for labor and material employed and used in the construction of this railway. The pledge of these bonds was made by the plaintiff to Hayes & Sons and not to the Park National Bank. Krutz v. Craig, 53 Ind. 561; 23 Am. and Eng. Ency. Law, 977; Kegg v. State, 10 Ohio 75; Conant v. Kimball, 95 Wis. 550; Grumley v. Webb, 44 Mo. 444; Carpenter v. Jamison, 6 Mo. App. 216, 86 Mo. 27; Tuley v. Barton, 79 Va. 387. (4) This action is not based upon any rights under the notes

given to the Park National Bank. The right of action exists independently of these notes and is so asserted in the petition. (5) The separate judgment against the appellant was proper. Oldham v. Henderson, 4 Mo. 295; Simpson v. Schulte, 21 Mo. App. 639; Lowe v. Electric Springs Co., 47 Mo. App. 426; Willis v. Barron, 143 Mo. 450; Sloan v. Terry, 78 Mo. 623; Hazlett v. Woodruff, 150 Mo. 534; McDonald v. Life Ass'n, 154 Mo. 618.

FOX, J.—This cause is here by appeal from a judgment against the defendant from the circuit court of the city of St. Louis. To fully appreciate the legal propositions involved in this controversy it is necessary to reproduce the petition and answer upon which the cause was tried. The petition is as follows:

"Now comes the plaintiff and by leave of court first had and obtained, files this its amended petition in this cause, and for a cause of action herein says:

"1. That it is now, and at the various times hereinafter mentioned was a corporation, duly organized, incorporated and existing under and by virtue of the laws of the State of Missouri. That the defendants, W. J. Hayes, Harry E. Hayes and W. L. Hayes are, and at the times hereinafter mentioned were, partners in business, doing business under the firm name and style of W. J. Hayes & Sons.

"2. The plaintiff further says that heretofore, to-wit, on the 22d day of August, A. D. 1900, it entered into a certain contract with the Mississippi Valley Transit Company, a corporation organized and existing under the laws of the State of Illinois, created for the purpose of constructing, maintaining and operating an electric railway between the cities of East St. Louis and Edwardsville in said State, wherein and whereby, for and in consideration of the sum of three hundred and sixty-five thousand dollars, agreed to be paid unto it by said Mississippi Valley Transit Com-

pany, this plaintiff agreed to build, construct and equip complete, ready for operation, the line of electric railway desired to be built by said Mississippi Valley Transit Company, commencing at a point in East St. Louis, Illinois, together with all necessary turnouts and sidings, to permit the operation of cars on a half hour schedule, according to certain specifications attached to said contract. That in and by said contract it was provided that to secure the payment to this plaintiff of the sums of money therein agreed to be paid unto it for such work of construction and equipment, the said Mississippi Valley Transit Company should, before work under said contract was commenced, deposit all of its issue of first mortgage bonds, amounting in the aggregate to five hundred thousand dollars par value, with some trust company in the United States.

"3. That thereafter this plaintiff entered upon the work of constructing the said railway and completed a considerable portion of the work included in said contract, and expended a large sum of money, to-wit, at least one hundred thousand dollars, in and about the performance of said contract, and the said Mississippi Valley Transit Company was at the various dates hereinafter mentioned indebted to it for the full cost of such work of construction, and to secure payment of said sum and other sums said railway company had pledged to this plaintiff the bonds hereinafter mentioned.

"4. That having so constructed and completed a large part of said electric railway, this plaintiff, to-wit, on the 1st day of February, A. D. 1901, entered into a contract with one Walter Alexander for the construction and completion of so much of said railway as was at said time unfinished and uncompleted, according to the terms of the contract already mentioned.

"5. That on or about the 1st day of May, A. D. 1900, said Mississippi Valley Transit Company made,

executed and delivered five hundred bonds of the denomination of one thousand dollars each, bearing date on said day, payable to bearer for value received thirty years after date, with semi-annual interest coupons attached to each of said bonds for the interest thereon, at the rate of six per cent per annum. And the plaintiff says that payment of all of said bonds was secured by a first mortgage executed by said railway company to the Farmers Loan and Trust Company of New York, as trustees, which said mortgage securing the bonds aforesaid conveyed to the trustee named all of the property and franchises of said railway company.

"6. The plaintiff says that said first mortgage bonds referred to in the preceding paragraph, are the same bonds mentioned and referred to in the contract between this plaintiff and said Mississippi Valley Transit Company, and the plaintiff further says that after the execution of the aforesaid contract between this plaintiff and said Mississippi Valley Transit Company, and before plaintiff had commenced work under said contract, said railway company actually deposited all of the said five hundred bonds, pursuant to said contract, with the American Trust Company, at Cleveland, in the State of Ohio, and thereby this plaintiff says all of the said bonds were by said railway company pledged to this plaintiff to secure to plaintiff the payment of all sums of money that would accrue and become payable to it for the construction and equipment of said railroad, according to the terms and provisions of the aforementioned contract between this plaintiff and said railway company.

"7. This plaintiff further says, that in and by the contract entered into by him with this plaintiff, dated February 1, 1901, the said Walter Alexander, in consideration of the promise of this plaintiff to pay him therefor the actual cost of the construction and equip-

191 Sup—17

ment of said line of railway for labor and material, plus fifteen per cent of the amount of such actual cost, agreed with this plaintiff to furnish all the necessary funds for the construction of said work, and to complete the construction of said railway in accordance with the terms and provisions of said contract entered into between this plaintiff and said railway company, as fast as the work could be prosecuted, and so that said work should be entirely completed by a date not later than June 1st, 1901, or by such later date as by strikes and other causes specified in such contract the work should be extended. That in and by said contract between this plaintiff and said Alexander, it was further provided that the aforesaid first mortgage bonds of said Mississippi Valley Transit Company should be by this plaintiff pledged as security for funds for labor and material under said contract, to the said Walter Alexander, or to any responsible person whom he might designate, until the said line of railway should be completed and accepted by said Mississippi Valley Transit Company. And plaintiff further says that it was in said contract further provided that said bonds should only be pledged in their entirety, and that in no event should they be divided or pledged in part only, and that said contract also provided that in the event that the said Alexander should fail to pay all sums contracted for by him to pay for labor and material for said work, this plaintiff should have the right to pay such sum or sums and redeem the said bonds from any pledge of the same which the said Alexander might have made under said contract.

"8. Plaintiff further says that the bonds mentioned in the contract between it and said Alexander are the same first mortgage bonds that prior to the date of the said contract had been pledged to it by said Mississippi Valley Transit Company, and which had been for the purpose of such pledge deposited with the American Trust Company at Cleveland. That

after the date of the aforesaid contract between this plaintiff and said Alexander, the said bonds were by said Mississippi Valley Transit Company withdrawn from the custody of the said American Trust Company at Cleveland, and delivered to this plaintiff, in order that they might be used for the purpose and in the manner provided in the contract between this plaintiff and said Alexander.

"9. That the plaintiff having so obtained the possession of said first mortgage bonds, said Walter Alexander and Woodruff & Williams, thereafter, to-wit, on March 4th, 1901, requested and directed the plaintiff to deposit all of said bonds with the firm of W. J. Hayes & Sons, of Cleveland, Ohio, as security, for money to be advanced for labor and material, as provided in the contract between said Alexander and this plaintiff, dated February 1st, 1901; said W. J. Hayes & Sons, here mentioned, being the same firm of which the defendants are and at the date of such request were the sole members.

"10. That pursuant to the aforesaid request and direction of said Alexander, the plaintiff thereafter did, to-wit, on the said 4th day of March, 1901, deliver and deposit all of the aforesaid bonds to and with the said firm of W. J. Hayes & Sons at Cleveland, in the State of Ohio, and then and there received from the said W. J. Hayes & Sons a receipt and agreement in words and figures as follows, to-wit:

" 'Received of H. W. Sebastian all of the first mortgage bonds of the Mississippi Valley Transit Company, dated May 1, 1900, and aggregating five hundred thousand dollars, being five hundred bonds of one thousand dollars each. · ·

" 'The said bonds to be held by the undersigned W. J. Hayes & Sons of Cleveland, Ohio, as collateral, and to secure the undersigned for advances and loans of money made in pursuance of a certain contract between the Inter-Urban Construction Company of St.

Louis, Missouri, and Walter Alexander of Lockport, N. Y., dated the first day of February, 1901, to which said contract reference is hereby made, and a copy for greater certainty is hereto attached.

" 'The undersigned to hold said bonds according to the provisions of said contract. Cleveland, Ohio, Mch. 4, 1901:

" 'W. J. HAYES & SONS.'

"And plaintiff says that said Sebastian represented and acted for this plaintiff in said delivery and deposit of said bonds, and said paper was given by said W. J. Hayes & Sons as and for a receipt and an agreement with this plaintiff.

"11. The plaintiff says that the contract mentioned and referred to in said receipts is the contract between this plaintiff and said Alexander, already alleged in this petition, and that a copy of the said contract was attached to the aforesaid receipt delivered to said Sebastian for this plaintiff by said W. J. Hayes & Sons.

"12. That on said 4th day of March, 1901, said Walter Alexander, together with the firm of Woodruff & Williams, made, executed and delivered to the said W. J. Hayes & Sons, eight negotiable promissory notes, each for the sum of ten thousand dollars, the aggregate amount of said notes being eighty thousand dollars, all thereof being payable to the order of the said firm of W. J. Hayes & Sons, each one of said notes being in the form following, to-wit:

" '$10,000.          Cleveland, Ohio, March 4, 1901.

" 'Four months after date, we jointly and severally promise to pay to the order of W. J. Hayes & Sons, the sum of ten thousand dollars, at the Park National Bank, Cleveland. Value received.
(I. R. Stamps $2.)

" 'WALTER ALEXANDER.
" 'WOODRUFF & WILLIAMS.'

"Plaintiff says that there was attached to each one of these notes a collateral agreement, executed by said Walter Alexander and Woodruff & Williams, which said collateral agreement was in words and figures as follows, to-wit:

" 'The foregoing is one of a series of eight notes of ten thousand dollars each, signed by the same parties and maturing on the same day, to secure the payment of all of which the undersigned have deposited with the Park National Bank of Cleveland, trustees, five hundred thousand dollars of the first mortgage bonds of the Mississippi Valley Transit Company, with full power and authority in said trustee, at the request of the holder of any one or more of said notes, to sell and assign and deliver the whole of said bonds, or any part thereof, at public or private sale, at the option of said trustee, upon the non-payment of any of the said above-mentioned notes, or the interest thereon, or at any time or times hereafter, without advertisement or notice; and after deducting all legal or other costs and expenses for collection, sale and. delivery, to apply the residue of the proceeds of such sale or sales so to be made to pay pro rata said holder or holders of said notes. Cleveland, Ohio, March 4, 1901.

" 'WALTER ALEXANDER.

" 'WOODRUFF & WILLIAMS.'

"13.   Plaintiff further says that on the day of the date of the aforesaid notes, and before the maturity thereof, the said W. J. Hayes & Sons endorsed all of the said notes, and negotiated and delivered the same, for value, to the Park National Bank, as trustee for certain other banks and individuals, to this plaintiff unknown, but for whom the said Park National Bank of Cleveland acted as trustee, and plaintiff says that such negotiation of the notes aforesaid by said W. J. Hayes & Sons was had by said firm through the said Park National Bank as agent or broker representing these other persons or corporations.

"14. That on said 4th day of March, 1901, said defendants herein delivered all of the said first mortgage bonds so by them received from this plaintiff to the said Park National Bank, as trustee, to be held by it as security for the payment of the eight notes above mentioned, and plaintiff says that thereafter the said Park National Bank held and kept in its custody all of the notes aforesaid, and also the aforesaid bonds pledged by said Walter Alexander and Woodruff & Williams under the foregoing collateral agreement, as security therefor.

"15. The plaintiff further says, that at the time of the receipt by them and the negotiation by them of the eight notes aforesaid, the said firm of W. J. Hayes & Sons and these defendants, had full knowledge of all of the terms of the contract between this plaintiff and said Alexander, and full notice and knowledge of the fact that said Walter Alexander had no authority in law or equity to pledge the said bonds to the said firm of W. J. Hayes & Sons, or the defendants herein or to any other person, for any purpose, or in any manner, except as in said contract provided, to-wit, as security for funds for labor and material used, or provided to be used in the work under the contract between him and this plaintiff. And plaintiff further says that said W. J. Hayes & Sons also had full knowledge that under the terms of his contract with this plaintiff, the said Alexander had no right to pledge the said bonds for notes of any shorter period, or otherwise than until the time when he had fully performed his said contract and the said line of railway had been fully completed and accepted by the Mississippi Valley Transit Company.

"16. Plaintiff says that neither the defendants, nor the said firm of W. J. Hayes & Sons, made any advances or loans of money to the said Walter Alexander in pursuance of the contract between this plaintiff and said Alexander, or for the purpose of paying for labor or material used, or provided to be used, in the comple-

tion of the railway in said contract provided for. That the said defendants and the said firm of W. J. Hayes & Sons received the proceeds of the negotiation of the notes aforesaid executed by Walter Alexander and Woodruff & Williams, for the security of which the first mortgage bonds aforesaid were pledged, as herein already alleged, and kept the said proceeds in their own control. That out of the said proceeds there was paid by the defendants to the said Walter Alexander, and by him used in the construction and completion of said railway, and for labor and material necessary in and about said construction, the sum of sixty-nine thousand five hundred and ninety-one and fifty-two one-hundredths dollars ($69,591.52), and that neither the said Alexander, nor the defendants, nor the said firm of W. J. Hayes & Sons, nor any other person, were under the terms of the aforesaid contract between this plaintiff and said Alexander entitled to hold said first mortgage bonds as security for any greater sum of money.

"17. Plaintiff further says, that said Walter Alexander and Woodruff & Williams failed to pay at the maturity thereof the aforesaid notes, amounting in all, as already stated, to the sum of eighty thousand dollars, and by them executed and delivered to the defendants, and by said defendants negotiated and transferred to the Park National Bank as trustee, as aforesaid, and said Walter Alexander also failed to complete the line of railway aforesaid, according to his contract with this plaintiff. The plaintiff says that on account of the default and failure of said Alexander to perform and complete his contract with it, plaintiff was compelled to and did assume charge of the construction of said railway, and thereafter completed the same, as it was bound to do by reason of its contract with said railway company. That at the date of the maturity of said notes for $80,000, above mentioned, said Mississippi Valley Transit Com-

pany was indebted to this plaintiff in a large sum of money, to-wit, at least one hundred thousand dollars, and the bonds aforesaid were pledged to this plaintiff as security for the payment of said indebtedness, and because of the default of said Walter Alexander and Woodruff & Williams in the payment of the said notes amounting to the sum of $80,000, and the failure of said Alexander to fulfill his said contract, the plaintiff, in order to preserve the security given to it by said railway company for the cost of the work actually done by it prior to February 1st, 1901, and also to retain the benefit of the security under its contract provided for the price of such work as remained to be done by it after the default of Alexander in the performance of his agreement with this plaintiff, was obliged to pay the said notes for $80,000, and to redeem the bonds aforesaid from the pledge made by said Alexander and Woodruff & Williams, as herein already alleged, to secure payment of said notes. The plaintiff says that the said notes for $80,000, and said bonds were negotiable and at the time when the same were so paid by this plaintiff, were in the hands of innocent holders for value who had no notice of the actual provisions of the contract between this plaintiff and said Alexander, or the limitations of that contract upon the right or authority of the said Alexander, or the defendants herein, or the said firm of W. J. Hayes & Sons, in respect of the use of said bonds. That in order to discharge the said notes and redeem the bonds aforesaid, the plaintiff was obliged to pay and did pay unto the said Park National Bank as trustee for the holders and owners of such notes, the sum of eighty thousand five hundred dollars, which sum of money was by this plaintiff so paid on the 15th day of July, A. D. 1901.

"18. The plaintiff says that the pledging of the said first mortgage bonds by said Alexander and Woodruff & Williams to said defendants, to secure the notes for $80,000 herein mentioned, and the negotiation

of the said notes by the defendants, were wrongful acts as against this plaintiff and that the plaintiff has been thereby damaged in the sum of eleven thousand dollars, for which sum, together with lawful interest thereon, from and after the said 15th day of July, A. D., 1901, and for the costs of this action, the plaintiff prays judgment.''

The defendants filed their answer as follows:

"Defendant H. E. Hayes, for answer to the amended petition herein, denies each and every allegation therein contained.

"Further answering this defendant says that the plaintiff empowered Walter Alexander to pledge the bonds described in plaintiff's petition for all sums contracted by him for funds to build a line of railway between East St. Louis and Collinsville, meaning and intending thereby to mean that said Alexander should be empowered to pledge said bonds to secure to anyone such commissions or interest, not exceeding fifteen per cent of the cost of construction, that he, said Alexander, might contract to pay for raising funds with which to construct said road; that he, the said Walter Alexander, entered into a contract with W. J. Hayes & Sons, and this defendant, by which, in consideration of such aid and assistance as defendant and said firm of W. J. Hayes & Sons might render to said Alexander in raising said funds, he, the said Alexander, should pay this defendant and said firm of W. J. Hayes & Sons respectively five per cent and two and one-half per cent on the cost of said road; and that payment thereof should be secured by said bonds and paid from the proceeds of any loan obtained thereon; that the defendant and said W. J. Hayes & Sons rendered all due assistance and procured for the purposes mentioned from Park National Bank of Cleveland, the sum of $80,000, whereby said Alexander became indebted to this defendant in the sum of $2,000 and to W. J. Hayes & Sons $4,000 and said Alexander paid out of the said

$80,000 procured as aforesaid, to this defendant, said sum of $2,000, and to W. J. Hayes & Sons $4,000; that in order to procure said loan it was necessary to pay and said Alexander agreed to pay and paid to the Park National Bank of Cleveland, the broker advancing said $80,000, by way of commissions and interest the further sum of $—— out of said loan of $80,000, and he the said Alexander agreed that the said bonds should be pledged as security for the amounts agreed by him to be paid to this defendant, to W. J. Hayes and Sons and to said Park National Bank.

"That after said loan was effected and with full knowledge of the agreements of said Alexander and that he had agreed to pay and had paid out of the proceeds of said loan to this defendant and said firm of W. J. Hayes & Sons, and to the Park National Bank the amounts aforesaid and that said bonds were pledged therefor, the plaintiff accepted the proceeds of said loan and the benefit of the services of this defendant, of W. J. Hayes & Sons and the Park National Bank and with said knowledge received and used the proceeds of said loan, in the construction of said road and thereby and otherwise, from time to time, ratified and approved the acts of said Alexander in pledging said bonds in the manner and for the purpose for which the same were pledged as aforesaid and is now estopped to question the authority of said Alexander to make such pledge in the first instance.

"This defendant further says that said Walter Alexander actually expended of said loan in the construction of said road the sum of $69,591. 52, of all of which plaintiff has received the benefit; that the said Alexander was entitled to receive therefor $12,438.62 under his contract with the plaintiff and that thereby said bonds were to become security for such compensation; that said Alexander agreed with this defendant and W. J. Hayes & Sons and with said Park National Bank that the said remuneration to them and to

each of them for procuring said loan should be paid to them out of the compensation which said Alexander was to receive from plaintiff; that the amount justly due and owing by plaintiff to said Alexander is greater than the amount paid by Alexander to this defendant and W. J. Hayes & Sons and the Park National Bank; wherefore defendant says that he owes the plaintiff nothing; that said Alexander is insolvent; that in equity and good conscience this defendant is entitled to offset against any sum which the plaintiff may be entitled to receive of this defendant all sums which said Alexander may have earned under his contract with plaintiff.

"And having fully answered, this defendant prays to go hence with his costs."

Plaintiff's reply was a general denial of the allegations contained in the answer.

This cause was tried by a jury. The record discloses substantially the following state of facts:

In the month of August, 1900, the Mississippi Valley Transit Company, a railroad corporation, organized under the laws of the State of Illinois for the purpose of constructing and operating an electric railroad between East St. Louis and Edwardsville, Illinois, entered into a contract with the plaintiff in this case, whereby it agreed to pay to this plaintiff the sum of three hundred and sixty-five thousand dollars, in consideration of the undertaking of this plaintiff to completely build, construct and equip the line of railway so as to make it ready for operation. In order to secure payment of this contract price the railroad company pledged to the plaintiff five hundred thousand dollars in first mortgage bonds. These bonds were deposited with the American Trust Company of Cleveland, pursuant to the provisions of this contract. The contract between the plaintiff and the Mississippi Valley Transit Company for the construction of the electric road between East St. Louis and Edwardsville, Illinois, con-

tained the following provision in respect to securing payment of the sums of money agreed to be paid for the construction of the road, to-wit:

"To secure payments of the sums of money herein specified, the party of the second part shall, before the work is commenced under this contract, deposit all of its issue of first mortgage bonds, amounting in the aggregate to five hundred thousand dollars par value, with some trust company in the United States, with such agreements and instructions regarding the holding and disposition thereof as may be agreed upon, and such agreements and instructions shall be part of this contract."

Plaintiff in pursuance of the provisions of its contract made with the Transit Company, proceeded with the construction of the electric railroad, but prior to the completion of the work upon said railroad, plaintiff, about February 1st, 1901, sublet the contract, and in doing this entered into a contract with one Walter Alexander for the completion of all the work that remained to be done in order to fully construct and equip the line of railway provided for in the original contract. At the date of the Walter Alexander contract the first mortgage bonds referred to in the original contract with plaintiff, were on deposit with the American Trust Company of Cleveland, Ohio, to secure the payment to plaintiff of the contract price for the construction of the electric railway. It is unnecessary to burden this statement with a reproduction of the entire contract between plaintiff and Walter Alexander; it will suffice to reproduce that part of it which is applicable to the legal propositions involved in this controversy. It contains this provision:

"The party of the second part (Alexander) agrees to furnish all the necessary funds for the construction of said work, and he shall receive as compensation for the furnishing of said funds and the completion of said work, the sum of fifteen per cent above the actual cost

of the construction of said work.    The party of the
first part to give its note at the completion of said
work, due in six months thereafter, bearing six per
cent interest from its date and to be secured by the en-
tire issue of bonds now in the possession of the Ameri-
can Trust Co. of Cleveland, Ohio.    Said bonds are to
be pledged as security for funds for labor and material
in the work under this contract to the said party of the
second part or any responsible person whom he may
designate, until said road is completed and accepted by
the Mississippi Valley Transit Co., at which time the
note of the party of the first part to the party of the
second part aforesaid shall be executed and delivered;
the amount of said note to be the cost of said construc-
tion plus fifteen per cent compensation to the said
party of the second part hereinbefore mentioned.

"In the event that the said Alexander shall fail
to pay all sums contracted for by him for funds to pay
the labor and material for said work, the Inter-Urban
Construction Co. to have the right to pay such sum or
sums and redeem said bonds from any pledge of same
he may have made hereunder.    In the event said Alex-
ander and the Inter-Urban Construction Co. shall both
fail to pay any sum or sums for which said bonds may
be pledged, then the party holding said bonds in pledge
therefor shall have the right to sell said bonds at pri-
vate sale to the best advantage obtainable for the pay-
ment of said sum or sums, upon giving the Mississippi
Valley Transit Co., and the Inter-Urban Construction
Co., not less than 60 days' notice in writing by mail of
the intention so to do, and after paying the costs and
expenses of said sale, including reasonable attorney's
fees, the party holding the bonds as security shall ap-
ply the proceeds thereof to the payment of the indebt-
edness secured by said bonds and pay over the surplus,
if any, to the Inter-Urban Construction Co., or its or-
der, or as any court of competent jurisdiction shall or-
der.    Said payment by said Inter-Urban Construction

Co., or said Mississippi Valley Transit Co., shall not be construed as a release of damages by said Inter-Urban Construction Co. for the failure by said Alexander to pay the same.

"It is agreed, however, that said bonds shall only be pledged in their entirety and in no event shall they be divided or pledged in part only."

As hereinbefore indicated, the $500,000 first mortgage bonds of the railway company were, at the date of the contract between the plaintiff and Alexander to complete the work in the construction of the electric railway, on deposit with the American Trust Company at Cleveland. The railway company and this plaintiff authorized Mr. H. W. Sebastian to obtain the possession of these bonds from the Trust Company in Cleveland, and about March 4th, 1901, he obtained the bonds. In pursuance of the contract between the plaintiff and Alexander that the bonds were to be deposited with Alexander or any responsible person whom he may designate, until said road was completed and accepted by the said Mississippi Valley Transit Company, the following order was given to Mr. Sebastian, who had possession of the bonds, by Walter Alexander and Woodruff & Williams:

"H. W. Sebastian, St. Louis, Missouri:

"Please deposit with W. J. Hayes & Sons, of Cleveland, the bonds of the Mississippi Valley Transit Company, of the par value of five hundred thousand dollars, as security for money to be advanced for labor and material under my contract with the Inter-Urban Construction Company. Dated February 1st, 1901.

"WALTER ALEXANDER,
"WOODRUFF & WILLIAMS."

It is apparent that the deposit of these bonds was contemplated at the date of the contract between plaintiff and Alexander, for the reason that the order to Sebastain to make the deposit is of the same date as

the contract.   Sebastian, in pursuance of the order
by Alexander, to deposit the bonds with W. J. Hayes &
Sons, on March 4th, 1901, made the deposit and as evi-
dence of such deposit W. J. Hayes & Sons executed the
following receipt:

"Received of H. W. Sebastian all of the first mort-
gage bonds of the Mississippi Valley Transit Com-
pany, dated May 1st, 1900, and aggregating five hun-
dred thousand dollars, being five hundred bonds of one
thousand dollars par value each.   The said bonds to be
held by the undersigned W. J. Hayes & Sons of Cleve-
land, Ohio, as collateral and to secure the undersigned
for advances and loans of money made in pursuance of
a certain contract between the Inter-Urban Construc-
tion Company of St. Louis, Missouri, and Walter Alex-
ander, of Lockport, New York, dated the first day of
February, 1901, to which said contract reference is
hereby made, and a copy for greater certainty is hereto
attached.   The undersigned to hold said bonds accord-
ing to the provisions of said contract. Cleveland, Ohio,
March 4, '01.               W. J. HAYES & SONS."

The record discloses that W. J. Hayes & Sons de-
sired a ratification  of the deposit made by Sebastian,
by the board of directors of the Mississippi Valley
Transit Company and a form of  resolution ratifying
the receipt given by W. J. Hayes & Sons was submit-
ted to them, whereupon they addressed the following
letter to Mr. Blanke:

"St. Louis, March 6th, 1901.
"Mr. A. G. Blanke, City.

"Dear Sir:  I think the resolution adopting and
ratifying the receipt given to us by Mr. Sebastian
should be a little more complete than is expressed in
the form submitted to you by Mr. Williams.  I there-
fore hand you the enclosed, which you will please have
your Board pass.               Yours truly,

"W. J. HAYES & SONS,

"W. L. HAYES."

In pursuance of the request of W. J. Hayes & Sons, there was a special meeting of the board of directors of the Mississippi Valley Transit Company held at the office of the company in St. Louis, Missouri, at which meeting the following proceedings were had:

"St. Louis, Missouri, March 18, 1901.

"SPECIAL MEETING OF THE BOARD OF DIRECTORS.

"Present: H. Gaus, W. M. Warnock, C. F. Blanke and J. F. Conrad. It was moved by Mr. Gaus and seconded by Mr. Conrad that the action of H. W. Sebastian in delivering the bonds of this company, amounting to $500,000 par value, to W. J. Hayes & Sons, of Cleveland, Ohio, on March 4, 1901, and the receipt given by W. J. Hayes & Sons to H. W. Sebastian therefor, which receipt reads as follows:

"'Received of H. W. Sebastian all of the first mortgage bonds of the Mississippi Valley Transit Co., dated May 1, 1900, and aggregating $500,000, being 500 bonds of $1,000 par value each. The said bonds to be held by the undersigned W. J. Hayes & Sons, of Cleveland, Ohio, as collateral and to secure the undersigned for advances and loans of money made in pursuance of a certain contract between the Inter-Urban Construction Co., of St. Louis, Mo., and Walter Alexander of Lockport, N. Y., dated this first day of February, 1901, to which said contract reference is hereby made and a copy for greater certainty is hereto attached. The undersigned to hold said bonds according to the provisions of said contract. Cleveland, Ohio, March 4, 1901. W. J. Hayes & Sons,' is hereby approved, ratified and confirmed. Said motion being put, all the directors voted 'aye' and same was duly carried. No further business before the board, meeting adjourned.

"J. F. CONRAD, Secretary.

——— —————,

"President."

On March 13, 1901, Will L. Hayes addressed the following letter to the secretary of the board of directors of the railway company:

"Mr. A. G. Blanke, Fullerton Building, St. Louis.

"My Dear Sir: I wish to extend to you my thanks for the courtesies shown me on my last trip to St. Louis. I think the matter of finance is now arranged so that the construction will go ahead and the road will be completed within a reasonable time. Trusting that we may see you in Cleveland, and that you will call upon us, I remain,

"Very truly yours,
"WILL L. HAYES."

After having obtained the five hundred thousand dollars mortgage bonds as heretofore indicated, Walter Alexander, together with Woodruff & Williams, executed to W. J. Hayes & Sons, for the purpose of securing the funds in the construction of the railway, a series of promissory notes of ten thousand dollars each, which were in the following form:

"$10,000.          Cleveland, Ohio, March 4, 1901.

"Four months after date, we jointly and severally promise to pay to the order of W. J. Hayes & Sons the sum of ten thousand dollars, at the Park National Bank, Cleveland. Value received.

(I. R. stamps $2.)

"WALTER ALEXANDER,
"WOODRUFF AND WILLIAMS."

These bonds were carried by Hayes & Sons and Alexander to the Park National Bank in Cleveland, Ohio, and there deposited with the Park National Bank to secure the payment of these notes, accompanied by the following collateral agreement:

"The foregoing is one of a series of eight notes of ten thousand dollars each, signed by the same parties and maturing on the same day, to secure the payment

191 Sup—18

of all of which the undersigned have deposited with the Park National Bank, of Cleveland, trustee, five hundred thousand dollars of the first mortgage bonds of the Mississippi Valley Transit Company, with full power and authority in said trustee, at the request of the holder of any one or more of said notes, to sell and assign and deliver the whole of said bonds, or any part thereof, at public or private sale, at the option of said trustee, upon the non-payment of any of the said above mentioned notes or the interest thereon, or at any time or times hereafter, without advertisement or notice; and after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made to pay pro rata said holder or holders of said notes. Cleveland, Ohio, March 4, 1901.

"WALTER ALEXANDER,
"WOODRUFF AND WILLIAMS."

These notes were indorsed by the firm of W. J. Hayes & Sons and also by the defendant, Harry E. Hayes. The notes were discounted at the Park National Bank of Cleveland. The bank charged discount at the rate of 7 per cent, and, in addition, exacted a commission of $1,000 for making the loan. These sums together amounted to about $2,900. The remaining proceeds, amounting to $77,070.67, were placed to the credit of Walter Alexander, trustee, at the Park National Bank, subject to be drawn upon checks signed by him and countersigned by W. J. Hayes & Sons, Samuel A. Williams and the cashier of the bank, John Sherwin. Immediately thereafter two checks were drawn upon this account, namely, one for $4,000 in favor of W. J. Hayes & Sons and one for $2,000 in favor of the defendant, Harry E. Hayes, both of these checks being for commissions which they claimed for guaranteeing payment of the notes already mentioned. Of this eighty thousand dollars for which the bonds

were pledged to the Park National Bank, Sebastian, who was the superintendent of construction of the railway, upon certain requisitions, by Alexander, only obtained the sum of $69,591.52, which was applied to the cost of labor and material necessary to the construction of the railway. The requisitions by Alexander were in the following form:

"St. Louis, Missouri, March 23, 1901.
"To the Park National Bank, and W. J. Hayes and Sons, Cleveland, Ohio.

"Gentlemen: Pay to H. W. Sebastian, superintendent, the sum of ten thousand dollars, to be used to pay for labor and material purchased and to be purchased, since March 13, 1901, under the Walter Alexander contract with the Inter-Urban Construction Company, dated February 1, 1901, required to be used in the completion of that section of the electric road of the Mississippi Valley Transit Company between East St. Louis and Collinsville in the State of Illinois, and not otherwise.

"WALTER ALEXANDER."

The acknowledgment of the receipt of the requisition by Sebastian was as follows:

"This certifies that the sum of ten thousand dollars mentioned in the above requisition, the receipt of which is hereby acknowledged, will be used to pay for labor and material purchased and to be purchased, since March 13, 1901, under the Walter Alexander contract with the Inter-Urban Construction Company, dated February 1, 1901, required to be used in the completion of that section of electric road of the Mississippi Valley Transit Company between East St. Louis and Collinsville in the State of Illinois, and not otherwise.        H. W. SEBASTIAN, Supt."

Prior to the delivery of the bonds to W. J. Hayes & Sons, on March 4, 1901, W. J. Hayes & Sons ad-

dressed the following letter to H. W. Sebastian, of date February 20, 1901:

"February 20, 1901.

"H. W. Sebastian,· Esq., Roe Building, St. Louis, Mo.

"Dear Sir: At the request of Messrs. Woodruff and Williams we wish to say that we have accepted their proposition to us to guarantee certain funds for construction purposes under Mr. Alexander's contract with the Inter-Urban Construction Company, dated February 1, 1901. $40,000 will be subject to Mr. Alexander's check, countersigned by us, as soon as the bonds are placed with us as security as provided in the contract, and additional sums will be placed to his credit as needed, in accordance with our contract with Woodruff & Williams. We observe that the contract provides that the work shall be done subject to the 'superintendence of the superintendent' of the Mississippi Valley Transit Company.

"Please have the Transit Company give us formal notice of the appointment of their superintendent, whose duty it will be to superintend the construction, with the signature of the superintendent affixed to said notice of appointment. A copy of all bills for material, and all payrolls, when paid, should be signed by the superintendent and sent to our office, to avoid dispute in settlement, and to furnish us a record of the progress of the work. This need not be done in case of incidentals and small expenditures that must be paid day by day. Mr. Alexander's voucher will be acceptable to us for such items. Mr. Williams suggests that we state to you we have made arrangements with him to unite our efforts with his efforts to procure the three hundred thousand dollar loan at the proper time, also to sell the bonds.    Yours very truly,

"W. J. HAYES & SONS."

There were a number of telegrams passed between Hayes & Sons and H. W. Sebastian. It is unnecessary

to burden this record with a reproduction of them. However, we will state that on June 11, 1901, Hayes & Sons were notified by Superintendent of Construction, Sebastian, that he must have funds by the next day or liens would be filed, and on the 12th of June, Sebastian again inquired of Hayes & Sons if they would furnish additional funds and notified them if they did not that the Alexander contract would be cancelled. Then followed communications between them as to other arrangements about funds. On July 9, 1901, after the notes became due to the Park National Park, W. J. Hayes & Sons sent the following telegram to C. F. Blanke:

"Cleveland, Ohio, July 9, 1901.
"C. F. Blanke, care Blanke Coffee Company.
"Note given bank authorizes them to sell bonds at private sale. They know nothing of the Alexander contract. Bank threatens to sell bonds to-morrow unless loan paid. Answer.
"W. J. H. & SONS."

On the same date they sent to H. W. Sebastian the following telegram:
"H. W. Sebastian, Roe Building, St. Louis, Mo.
"Bank threatens to sell bonds to-morrow if loan is not paid. Williams telephoned from New York that you had sold road. Answer.
"W. J. H. & SONS. 10:30 p. m."

Alexander being unable to furnish the necessary funds to carry on the work of completing the railway, the contract between plaintiff and Walter Alexander was cancelled on June 14, 1901. The testimony tends to show that at the date of the cancellation of the Alexander contract, to complete the unfinished work on the railway cost about one hundred and ninety thousand dollars, and that prior to the entering into the contract with Alexander, plaintiff had expended upon the construction of this road about one hundred thousand

dollars. It is apparent that if the plaintiff was to have a lien upon the bonds issued by the Mississippi Valley Transit Company to secure the amount of its expenditure upon this road it was necessary for them, in order to prevent the sale of the bonds and secure said lien, to pay to the Park National Bank the notes for which the bonds had been pledged. In order to protect itself in this respect it paid off said notes and instituted this proceeding to recover the difference between the actual amount received for labor and material in the construction of the railway and the amount actually paid for the redemption of the bonds.

In order to justify the payment of $6,000 to himself and to his firm out of the proceeds derived from the pledging of these bonds, as well as the discount and bonus to the Park Bank, the defendant introduced two papers, termed contracts by the appellant: One between the firm of Hayes & Sons and the firm of Woodruff & Williams and Walter Alexander, and another between H. E. Hayes and the same parties, which papers are here set out:

"Cleveland, Ohio, February 19, 1901.
"Messrs. W. J. Hayes & Sons, Bankers, City.

"Gentlemen: In consideration of your communication of this date relating to the guaranty for the sum of eighty thousand dollars for us for the purpose of procuring funds to pay for labor and material to complete the line of railroad of the Mississippi Valley Transit Company between East St. Louis and Collinsville, in the State of Illinois, and in consideration of said guaranty to be hereafter executed, we hereby agree to pay your firm a sum equal to five per cent of the amount so to be guaranteed; payment to be made pro rata as the same is procured on said guaranty.

"In witness whereof we have subscribed our names, this the day and year first above written.
                    "WOODRUFF & WILLIAMS,
                    "WALTER ALEXANDER."

"Cleveland, Ohio, February 19, 1901.
"H. E. Hayes, Esq., City.

"Sir: In consideration of your communication of this date relating to the guaranty for the sum of eighty thousand dollars for us for the purpose of procuring funds to pay for labor and material to complete the line of railroad of the Mississippi Valley Transit Company between East St. Louis and Collinsville in the State of Illinois, and in consideration of said guaranty to be hereafter executed, we hereby agree to pay you a sum·equal to two and one half per cent of the amount so to be guaranteed; payment to be made pro rata as the same is procured on said guaranty. We also agree to pay you a further sum of seven and one-half per cent on all sums above eighty thousand dollars on which we receive fifteen per cent provided for in a certain contract between the Inter-Urban Construction Company of St. Louis, Mo., and Walter Alexander, bearing date February 2, 1901. If a less sum than fifteen per cent is received on sums of over eighty thousand dollars commission to be reduced proportionately.

"In witness whereof, we have subscribed our names this the day and year first above written.

"WOODRUFF & WILLIAMS,
"WALTER ALEXANDER."

There was oral testimony offered in respect to the transactions involved in this dispute. We deem it unnecessary to reproduce it in detail. The appellant offered testimony tending to show that the deposit of these bonds was by Alexander with the Park National Bank, which was by the court excluded, or at least the consideration of such testimony was taken away from the jury by the instructions of the court. There was also testimony as to Sebastian having knowledge of the deposit with the Park National Bank and Alexander and Hayes & Sons which testimony was introduced

for the purpose of showing a waiver on the part of the plaintiff. Upon the question as to whether he had notice, at the time the transaction occurred with the Park National Bank, there is a conflict of testimony. We will make such reference to the oral testimony during the course of the opinion as we deem its importance demands.

The defendant, at the close of the testimony on the part of the plaintiff, offered a demurrer to the evidence, and repeated such offer at the close of the entire case, which demurrers were denied. The defendant requested the court to charge the jury as follows:

"The court instructs the jury that under the law and the evidence the plaintiff cannot recover in this action and the verdict of the jury must be in favor of the defendant.

"The court instructs the jury that under the terms of the contract between the Inter-Urban Construction Company and Walter Alexander the latter was privileged to pledge the bonds of the Mississippi Valley Transit Company to secure any reasonable compensation that Alexander may have agreed to pay W. J. Hayes & Sons and Harry E. Hayes, or either or both of them for guaranteeing or endorsing his notes or for otherwise aiding in the obtention of a loan to be used in constructing the electric road between East St. Louis and Collinsville, and he was likewise privileged to pay from the proceeds of any loan he might make the amount of such reasonable compensation to W. J. Hayes & Sons or Harry E. Hayes, or either or both of them.

"Though the receipt given by Hayes dated March 4th indicates on its face that W. J. Hayes & Sons received the bonds in pledge, yet defendant is entitled to show the real facts of the transaction, and if you find that in fact the pledge of the bonds was made by Alexander (through Williams, his agent) to the Park National Bank, as set forth in the other instructions

given you, plaintiff cannot recover in this action and your verdict must be for defendant.

"The court instructs the jury that if they believe and find from the evidence that Walter Alexander made his notes in favor of W. J. Hayes & Sons, who endorsed the same, and that the Park National Bank advanced the sum of $80,000 less commissions and discount on said notes, with the bonds of the Mississippi Valley Transit Company, as collateral security, and that the amount so advanced was placed to the credit of 'Walter Alexander, trustee' on the books of said bank, and funds therefrom were afterwards withdrawn by checks signed by Walter Alexander (countersigned by Williams and Hayes), and the amount of said checks remitted to the Inter-Urban Construction Company or its superintendent, Sebastian, then this was a pledge of the bonds of Alexander to the Park National Bank and not to Hayes, and plaintiff cannot recover and your verdict must be for defendant.

"If at the time of the loan from and the pledge of the bonds to the Park National Bank, or shortly thereafter, plaintiff, or its representative Sebastian, knew that Alexander had agreed to pay and had paid out of the proceeds of said loan various sums to the Bank and to W. J. Hayes & Sons and Harry E. Hayes by way of commissions and interest, and with such knowledge took and used the remainder of such loan to the extent of $69,000 in the construction of its road, then plaintiff was thereafter estopped and is now estopped from recovering such commissions or interest from the defendant and your verdict should be in favor of the defendant.

"If the jury believe and find from the evidence that out of the proceeds of the Cleveland loan $69,000 was expended for labor and material on the electric road referred to in the contract between the Inter-Urban Construction Company and Alexander, and that thereby plaintiff got and retained the benefit of such ex-

penditure, then Walter Alexander was entitled to reasonable compensation for his services in constructing so much of said road (not exceeding 15 per cent on $69,000, or $10,350), notwithstanding he did not fully complete said road or in all things perform his contract with plaintiff, and if you find that the plaintiff has not paid said Walter Alexander for the services so performed by him, then plaintiff cannot recover in this action against defendant, if you believe that the amount which Alexander paid W. J. Hayes & Sons and Harry E. Hayes is less than the amount so earned by Walter Alexander in constructing said road.''

Which instructions the court refused to give and the defendant at the time then and there duly excepted.

Thereupon the court gave the following instructions, to-wit:

''The plaintiff in this case charges that the defendants who comprise the firm of W. J. Hayes & Sons unlawfully pledged the bonds in controversy to the Park National Bank to secure the payment of 8 promissory notes of $10,000 each, amounting in all to $80,000, which were discounted by such bank; that of the proceeds of such notes $69,591.52 went into the construction of the railroad, that plaintiff was obliged to and did take up said notes in order to protect the bonds and paid therefor the sum of $80,500; that plaintiff lost the difference between the amount so paid, $80,500, and the amount which went into the construction of the road, $69,591.52, and has been thereby damaged in the sum of $11,000 for which amount it asks judgment.

''The defendant denies that the pledge of the bonds to the bank was unlawful and claims that out of said loan there was properly paid to the bank $2,900 in discount and bonus, to defendant Harry E. Hayes as commission $2,000 and to W. J. Hayes & Sons the sum of $4,000 as commissions. Defendant claims further that the plaintiff through its agent and officer Sebastian, knew of the pledge of the bonds to the bank, knew

of the payment of the commissions, discount and bonus out of the $80,000, knew that the pledge of the bonds covered such payments, and approved and ratified the pledging of the bonds and the purposes for which they were pledged. The plaintiff denies that it knew of such pledge or its purposes or that it approved or ratified same.

"The court instructs you that, under the contracts read in evidence, neither Alexander nor the defendants had a right to so pledge the bonds as security for commissions, bonus and discounts, that plaintiff would be compelled to pay such commission, bonus and discounts in order to protect the bonds from sale, nor had they the right to pledge the bonds for any purpose other than to secure the payment of funds that actually went into the construction of the road, and the defendant, Harry E. Hayes, under the terms of such contracts, is liable to plaintiff for the difference between the amount of money that was actually used in the construction of the road and the amount which plaintiff was obliged to pay to the bank, by reason of the pledge, in order to protect the bonds from sale under the pledge.

"On the other hand, the plaintiff might waive the terms of the contracts and consent to the pledging of the bonds, for other purposes than to secure payment of money used in the construction of the road, and if the plaintiff, through Sebastian, knew of the pledge and its terms, and knew of the payment of the commissions, bonus and discount at the time when the pledge was made, and afterwards accepted proceeds of the loan there can be no recovery by the plaintiff for such commission, bonus and discount. Whether plaintiff had such knowledge is a question of fact for you to determine from the evidence in the case. If, therefore, you find from the evidence that the defendant pledged the bonds with the Park National Bank to secure $80,000 and that any part of said $80,000 did not go into the

construction of the road, and if you find that plaintiff in order to protect said bonds was compelled to pay and did pay said bank the amount of the said loans of $80,000, then plaintiff is entitled to a verdict for the difference between what it paid to the bank and the amount of the proceeds of the loan actually used in the construction of the road not exceeding $11,000, unless you further find from the evidence that the plaintiff knew, through Sebastian, at the time when the bonds were pledged, of the pledge to the bank, its nature and purpose, and knew further that there was to be paid out of the amount loaned by the bank, discount and bonus to the bank, and commissions to W. J. Hayes & Sons and to Harry E. Hayes, and if the plaintiff had such knowledge through Sebastian there can be no recovery here for the amount of such discount, bonus and commissions.

"You are further instructed that the burden of proof is upon the defendant to establish, by the greater weight of evidence, to your satisfaction, the fact that plaintiff had knowledge, through Sebastian, of the facts aforesaid, concerning the pledging of the bonds and the arrangement to pay commissions, bonus and discount at the time when the bonds were pledged.

"You are further instructed in this connection that if you find that after the bonds were pledged to the bank the plaintiff acquired knowledge that under some arrangement between Alexander and defendant or the firm of W. J. Hayes & Sons, certain charges and commissions had been deducted from the proceeds of the pledge, this fact will not by itself warrant the jury in finding that at the time of the pledge the plaintiff consented to such arrangement, nor would the fact that proceeds of the pledge were received and used by Sebastian in the construction of the road by itself warrant a finding that plaintiff had knowledge of or consented to such arrangement for commissions and charges, but these facts may be considered by you in

connection with all the facts in evidence in passing up-
on the question whether plaintiff, through Sebastian,
at the time of the pledge, knew of such arrangement
for charge and commissions and consented thereto.

"The court instructs the jury that under the con-
tract dated February 1st, 1901, between him and the
plaintiff, Walter Alexander was not entitled to receive
any commission by way of compensation for work un-
der said contract until the road therein mentioned was
fully completed according to contract; that as said
road never was so completed by Alexander, no right
to commission has accrued to said Alexander on ac-
count of the part of the entire work which he did, and
defendant is not entitled to claim any benefit or com-
mission whatever in this cause for what was actually
done by Alexander prior to the cancellation of his con-
tract by the plaintiff about the construction of the rail-
way in question.

"The court instructs the jury that the burden of
proof in this case is on the plaintiff to establish the
facts necessary to a recover, and it must establish, by
a preponderance of the evidence, all the facts set forth
in the other instructions given as necessary to be
found to entitle the plaintiff to a judgment and if as
to any such fact the evidence does not preponderate in
favor of plaintiff your verdict must be for the defen-
dant.

"The court instructs the jury that nine of your
number have the power to find and return a verdict,
and if less than the whole of your number, but as
many as nine, agree upon a verdict, the same should
be returned as the verdict of the jury, in which event
all of the jurors who concur in such verdict shall sign
the same.

"If, however, all of the jurors concur in a verdict,
your foreman alone may sign it."

To the giving of which instructions and each of

them, defendant at the time then and there duly excepted.

The case was then argued to the jury by the respective counsel for plaintiff and defendant, and the jury retired.

Thereafter the court, upon receiving a request from the jury for further instructions, recalled the jury and gave them the following additional instructions, to-wit:

"The court gives you this additional instruction. If under the foregoing instructions you find for plaintiff and further find that at the time when the bonds were pledged to the bank the plaintiff did not know of the terms of the pledge and the arrangement for payment of commissions and charges as explained in former instructions, you should return a verdict for plaintiff for the amount of the difference between the amount of money that was used in the construction of the road and the amount paid by plaintiff to redeem the bonds.

"If you find for plaintiff but further find at the time the bonds were pledged plaintiff did know of the arrangement to pay commissions and charges and assented thereto as explained in former instructions, then you should deduct from the sum which plaintiff paid, over and above what went into the construction of the road, to redeem the bonds, the amount of the charges and commissions and return a verdict for plaintiff for the balance, such charges and commissions amounting to $8,900."

The cause was submitted to the jury upon the testimony and instructions of the court and they returned a verdict finding the issues for the plaintiff and assessing its damages at the sum of $11,000; plaintiff of this amount remitted $404.85, and judgment was entered in favor of the plaintiff against the defendant for the sum of $10,595.15.

This is a sufficient statement of this cause to en-

able us to dispose of the legal propositions presented by the record.

Motion for new trial on the part of the defendant was overruled and in due time and proper form he prosecuted his appeal to this court, and the record . is now before us for consideration.

### OPINION.

Numerous contentions are urged by learned counsel for appellant as grounds for the reversal of the judgment in this cause. The most vital and important questions presented by the record in this cause may thus be briefly stated:

1. It is insisted that the deposit of the bonds was made with the Park National Bank of Cleveland, Ohio, and not with W. J. Hayes & Sons. From this contention there flows the additional complaint by appellant that the court improperly excluded evidence tending to show that the deposit of the bonds was made with the Park National Bank.

2. That the terms of the contract between plaintiff and Walter Alexander of February 1st, 1901, authorized the pledging of the bonds to obtain funds not only for labor and material in the construction and equipment of the electric railway, but as well for commissions and expenses of securing the loan of money for prosecuting the work.

3. It is insisted that the law applicable to commercial paper controls this case and that in the absence of proof that the Park National Bank were innocent holders of the bonds for value, there can be no recovery, and that the court should have so declared the law in its instructions.

4. That the court erroneously declared the law upon the facts as disclosed by the record, and refused proper declarations of law requested by the defendant.

The propositions as herein indicated are the main ones with which we are confronted, and for their proper solution we must rely chiefly upon a fair and reasonable interpretation of the contracts and other written evidence disclosed by the record.

Upon the first proposition involving the question, with whom was the deposit of bonds made? we think it is clear that it was made with W. J. Hayes & Sons. If written obligations are longer to be considered as possessing any force and vitality there can be no escape from the conclusion that the bonds, in the legal sense, were deposited with W. J. Hayes & Sons. In support of the correctness of this conclusion, we need not go beyond the contract of March 4, 1901. In it we have not only the mere acknowledgment of the receipt of the bonds, but followed with a plain and unambiguous contract of pledge. In this contract, after acknowledging the receipt of the securities, it is expressly stated: ''The said bonds to be held by the undersigned W. J. Hayes & Sons, of Cleveland, Ohio, as collateral and to secure the undersigned for advances and loans of money made in pursuance of a certain contract between the Inter-Urban Construction Company of St. Louis, Missouri, and Walter Alexander, of Lockport, New York, dated the first day of February, 1901, to which said contract reference is hereby made, and a copy for greater certainty is hereto attached. The undersigned to hold said bonds according to the provisions of said contract,'' and this contract was signed by W. J. Hayes & Sons, on March 4, 1901.

If this does not furnish undisputable evidence of this important business transaction, then we must ignore all careful business methods, and the preservation of the evidence of them in writing goes for naught. If it were necessary we have the fact that this business transaction occurred in the manner recited in the contract emphasized by other disclosures in the record. The record clearly discloses that this deposit of the

bonds with W. J. Hayes & Sons was in strict conformity to the original contract between plaintiff and the Mississippi Valley Transit Company, as well as the contract between the plaintiff and Walter Alexander for the completion of the work in the construction of the railway. The original contract with the plaintiff by the railway company expressly provided that these bonds could only be pledged in their entirety, and in no event could they be divided or pledged in part only, and they could only be pledged to secure the payment of the sums of money specified in the original contract. About February 1st, 1901, the contract with Walter Alexander for the completion of the work begun by the plaintiff upon this railway, was entered into. Alexander, under the terms of that contract, agreed to furnish all the necessary funds for the construction of the work, and in the contract with Alexander it was provided that these bonds which were securities belonging to the plaintiff to protect them in the balance of the work already performed or to be performed in the event of the cancellation of the contract with Alexander, might be pledged to secure funds to be used by Alexander for labor and material in the work to be performed under his contract with the plaintiff. It was provided that the bonds should be deposited with Alexander or any responsible person whom he might designate until such road was completed and accepted by the said Mississippi Valley Transit Company. Upon the consummation of the contract between the plaintiff and Walter Alexander for the completion of the work in the construction and equipment of the railway, H. W. Sebastian was authorized by both the plaintiff and the railway company to obtain the bonds from the trust company where they had been deposited. After obtaining the bonds they were not deposited with Mr. Alexander under one of the provisions of the contract, but in pursuance of another provision of the contract,

by a written request, of date February 1st, 1901, he designated W. J. Hayes & Sons of Cleveland, as the parties with whom the deposit or pledge of these bonds should be made. Mr. Sebastian, in obedience to such request, made the deposit with W. J. Hayes & Sons as evidenced by the contract heretofore referred to. .This deposit with W. J. Hayes & Sons under the Alexander agreement could only be made with the consent of the railway company and as further emphasizing the fact that this deposit was made with them, they requested a formal ratification of the action of Sebastian by the board of directors of the railway company. This disclosure of the record makes the conclusion inevitable that the deposit of these bonds was made with W. J. Hayes & Sons.

This leads us to the consideration of the complaint by appellant of error on the part of the trial court in the exclusion of testimony tending to show that the deposit was made by Alexander with the Park National Bank of Cleveland, Ohio, and thereby vary and contradict the receipt or contract offered in evidence. Upon this contention appellant insists that the document in which the acknowledgment of the receipt of the bonds is acknowledged, is a formal receipt, and under the law is subject to explanation and contradiction and may be varied by oral testimony. To this insistence we cannot give out assent. It may be conceded that, if the provision acknowledging the mere receipt of the bonds stood alone, defendant's contention could be maintained, and it would be subject to explanation by oral testimony, but this document must be construed in its entirety, and it certainly will not be seriously contended that the concluding portion of that receipt, reciting how the bonds are to be held and agreeing that they shall be held according to the provisions of the contract between the plaintiff and Walter Alexander, is not, in all of its essential features, a contract of pledging, and that being true, it would be illogical to say

that you could vary or contradict the provision of the contract acknowledging the receipt of the bonds and not vary or contradict the subsequent contractual provision of the pledging of these bonds as security. The very instant it is shown that there was no deposit of the bonds or delivery of the bonds to Hayes & Sons, it necessarily follows that they did not contract to hold the bonds according to the provisions recited in the receipt. In other words, to permit oral testimony to show that these bonds were not delivered or deposited with Hayes & Sons, would, in effect, destroy the force of the provisions of the contract recited in the receipt. The law upon this subject is very clearly and tersely stated in the text, 23 Am. and Eng. Ency. Law (2 Ed.), page 978. It is thus stated: ''A simple receipt is not a contract, but is merely evidence of the performance in whole or in part of a contract. A receipt may, however, contain stipulations, which amount to a contract, and it then becomes a contract governed by the law of contracts. So far as it partakes of the character of a mere receipt it may be varied and controlled by parol evidence, but in other respects it stands like any other written contract, and cannot be so contradicted.''

In all business transactions the reduction to writing of the agreement is but to preserve the evidence of their contract, and Mr. Greenleaf in his admirable work upon Evidence, in speaking of a receipt says, that ''in so far as it is evidence of a contract between the parties, it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol.'' [1 Greenleaf's Ev. (16 Ed.), sec. 305.] This law as applicable to receipts finds full support in numerous well-considered adjudicated cases. [Krutz v. Craig, 53 Ind. 51; Conant v. Estate of Kimball, 95 Wis. 550; Tuley v. Barton, 79 Va. 387; Carpenter v. Jamison, 75 Mo. 285.]

The contract between plaintiff and Walter Alexander expressly provided that the bonds were to be

pledged either to Walter Alexander or to some responsible person designated by him as security for funds for labor and material in the construction of the work under the contract. Under this provision Alexander had the right to accept the bonds under pledge or to designate the person to whom they should be pledged. They were not pledged to Alexander; if so, it is strikingly strange that the record discloses no preservation of the evidence of any such transaction. He did, however, designate Hayes & Sons, and when he did this his power and authority in relation to the bonds under the provisions of the contract, was exhausted, and if in fact he pledged the bonds to the Park National Bank he did not acquire them through the plaintiff upon the terms of the contract, but evidently secured them from Hayes & Sons, whom he had designated as the responsible person to whom the deposit should be made. By the terms of the receipt executed to Sebastian, Hayes & Sons were to hold these bonds as collateral security for money advanced to Alexander and expressly agreed that the bonds were to be held in accordance with the terms of the contract between Alexander and plaintiff. We are unable to see how this contractual part of that instrument could stand, if oral testimony was permitted to show that the bonds were never delivered to Hayes & Sons. The deposit and pledging of these bonds to Hayes & Sons was an important business transaction. It was in keeping with careful business methods to preserve the evidence of the terms upon which they should be held. It was reduced to writing, and we are unwilling to convict the trial court of error in excluding the testimony which tends to contradict and vary the terms of that contract.

It is next insisted that the terms of the contract between the plaintiff and Walter Alexander of February 1, 1901, were broad enough to authorize the pledging of the bonds to obtain funds to pay for commissions and expenses of securing loans for the prosecu-

tion of the work by Alexander under his contract, and
that the appropriation of funds secured by the pledg-
ing of these bonds to the payment of such commissions
and expenses contracted for in securing loans was ful-
ly warranted under the Alexander contract.  We are
of the opinion that a careful analysis of the terms of
the contract between Alexander and the plaintiff dem-
onstrates that the contract is susceptible  of but one
construction,  and that is that these bonds could only
be pledged for the securing of funds for labor and ma-
terial in the construction of the work upon the electric
railway of the Mississippi Valley Transit Company,
and that the funds secured by reason of the pledge of
such bonds could only be appropriated to the payment
for such labor and material.  Upon this  proposition
the contract must speak for itself—its terms are neith-
er uncertain nor ambiguous.  The authority to pledge
the bonds, the conditions and purposes for which they
may be pledged, are plainly expresed  in the contract.
It provides:  "Said bonds are to pledged as security
for funds for labor and material in the work under this
contract to the said party of the second  part  or any
responsible person whom he may designate, until said
road is completed and accepted by the Mississippi Val-
ley Transit Company."

It is not seriously contended, if this  provision
stood alone, that these bonds could be pledged to pro-
cure funds for any purpose other than to pay for labor
and material in the construction of the work upon the
railway, or that the funds so procured could be ap-
propriated to any other purpose; but defendant in-
sists that a subsequent paragraph in the contract au-
thorizes the pledging of the bonds and the appropria-
tion of funds procured by such pledge to the payment
of all sums of money contracted for by Alexander in
the procuring of such funds.  The provision relied up-
on is as follows:  "In the event that the said Alexand-
er shall fail to pay all sums contracted for by him for

funds to pay for labor and material for said work, the Inter-Urban Construction Co. to have the right to pay such sum or sums and redeem said bonds from any pledge of same he may have made hereunder. In the event said Alexander and the Inter-Urban Construction Company shall both fail to pay any such sum or sums for which said bonds may be pledged, then the party holding said bonds in pledge therefor shall have the right to sell said bonds at private sale to the best advantage obtainable for the payment of said sum or sums, upon giving to the Mississippi Valley Transit Company and the Inter-Urban Construction Company, not less than 60 days' notice in writing by mail of the intention so to do.''

The only authority to pledge the bonds for the securing of funds is contained in the first provision of the contract quoted, and the provisions of the second paragraph referred to cannot by any fair and reasonable construction enlarge the powers and authority contained in the first provision. Applying the familiar rule of interpretation, that all parts of a written instrument should be construed together and brought into harmony so that every part may have effect according to the general intention apparent from the instrument regarded as a whole, the contention of the defendant as to the force and effect of the last paragraph in the contract, must fail. It is clear that under this well-recognized rule of construction of contracts, the provisions of the paragraph relied upon by defendant would not authorize a pledging of the bonds for commissions, interest, bonuses and expenses in securing the loan. Such construction would result in destroying the force of the provisions as to the limitations upon the power to pledge the bonds as contained in the first paragraph referred to. The sums of money contemplated by the second provision in this contract, in which the plaintiff upon the failure of Alexander to pay, would be authorized to pay, are such sums of

money only contracted for as were authorized under the first paragraph quoted, which expressly defined the authority to pledge the bonds and clearly limited the appropriation of the funds secured by such pledge. By no reasonable rule of construction can the terms employed in the second paragraph of the contract enlarge the powers as contained in the first. That the sums of money mentioned in the second provision of the contract were only such sums as were authorized to be secured by the pledging of the bonds as mentioned in the first, is made apparent by the terms employed in the contract. The second paragraph relied upon by the defendant does not undertake to treat of the authority or power to pledge the bonds, nor was it so intended by the parties to the contract. It was simply a provision inserted in the contract to meet conditions which might arise upon the exercise of the limited power and authority under the first provision of the contract herein quoted. We are unwilling to sanction the contention that the contract between plaintiff and Alexander, in any of its provisions, gave unlimited power to pledge these bonds for commissions, interest and expenses for securing funds in the construction of the work. To interpret the second provision of the contract as contended for by the defendant would not only be violative of the familiar rules of construction, but in conflict with the manifest intention of the parties to the contract as disclosed by the record in this cause. The Alexander contract plainly provided that Alexander should furnish all the necessary funds for the construction of the work, and definitely fixed his compensation for the furnishing of such funds and completion of such work at the sum of fifteen per cent of the actual cost of the construction of such work. This provision, together with the express recital in the contract, that the bonds could only be pledged for security for funds for labor and material in the work under the contract, makes it apparent that it was con-

templated by the parties to this transaction that whatever sums of money were to be paid for the securing of loans in the way of commissions, interest and expenses, were to be paid by Mr. Alexander, and that these bonds could not be pledged for anything except as security for funds for labor and material in the construction of the work as provided by the contract. The correctness of the conclusions reached as to the proper and reasonable construction of the terms of this contract is made manifest by the practical construction given its terms as disclosed by the record before us.

It is next insisted that, to entitle plaintiff to recover, it was essential that proof should be made that the Park National Bank was an innocent holder of the bonds pledged for the eighty thousand dollars, for value, without notice, and that the court erred in failing to require this fact to be found by the jury as alleged in the petition. It is sufficient to say upon that proposition that there was no privity of contract between the Park National Bank and the plaintiff; that the plaintiff had passed the title to these bonds in accordance with the directions of Alexander, who had the right to designate the responsible person with whom the bonds should be deposited; and even though the Park National Bank may have had notice of the limitations as to the uses and purposes to which the funds procured could be appropriated, as provided in the Alexander contract, yet we take it that as between the plaintiff and the Park National Bank, its right to hold such bonds as collateral security for the funds disbursed would not be affected. The wrong as perpetrated was not by the Park National Bank, but by W. J. Hayes & Sons, whose duties in respect to the pledging of these bonds and the appropriation of the funds secured by such pledge were expressly defined by the contract to which they were parties. It must not be overlooked (and the repetition of the terms of the contract will be pardoned) that the Alexander con-

tract expressly provided that these bonds should be pledged as security for funds for labor and material in the work under the contract, to Alexander or any responsible person whom he might designate. He designated by a written request Hayes & Sons, and they accepted the bonds upon said designation under the express agreement to hold them in accordance with the terms of the contract between plaintiff and Alexander; hence it follows that Hayes & Sons were to furnish the funds for labor and material in the construction of the work and while their contract did not prevent them from repledging these bonds in the security of such funds, still their duty in respect to them and the uses and purposes to which they could apply the proceeds procured by the pledging of them was limited by the terms of the contract in which they expressly agreed to hold them. These bonds were negotiable instruments with no prohibition against Hayes & Sons, with whom they were deposited, transferring the title to secure funds, and while the rights of third parties to whom the bonds were transferred could not be affected, still under the terms of the contract Hayes & Sons should be held responsible for any injury resulting from a wrongful conversion and use of the securities deposited with them for limited purposes and uses. With the views as herein indicated upon this proposition, there was no error by the trial court in its failure to require the jury to find that the Park National Bank was an innocent holder for value of the bonds transferred to it.

This brings us to the consideration of the instructions requested by the defendant. The first instruction is in the nature of a demurrer and was properly denied. Instruction numbered 2 was a request of the court to instruct the jury that, under the terms of the contract between plaintiff and Walter Alexander, the latter was privileged to pledge the bonds as security for sums of money agreed to be paid Hayes & Sons or Harry E. Hayes or either or both of them for indorsing his notes,

or for otherwise aiding in the obtention of loans to be used in the construction of the electric railway between East St. Louis and Collinsville, and authorizing said Alexander to pay from the proceeds of such loans the compensation for the purposes mentioned. We are unwilling to give our assent to this interpretation of that contract, and in our opinion it is not a fair and reasonable construction of its terms. We have herein indicated our views upon this proposition; hence, there is no necessity for further discussing this refused instruction. There was no error in the denial of the request.

Instruction numbered 3 requested by defendant has reference to the conclusiveness of the receipt or contract offered in evidence by the plaintiff. We have fully given expression to our views upon that subject and will not burden this opinion with a further discussion of it.

The same may be said of instruction numbered 4. It undertakes to submit the issue as to whether or not the bonds were pledged by Alexander to the Park National Bank and not to Hayes & Sons. Under the evidence in this case there was no basis for such an instruction and there was no error in its refusal by the court.

Instruction numbered 5 denied by the court undertakes to make mere knowledge shortly after the pledge of the bonds to the Park National Bank of the appropriation of the funds secured by the loan to the payment of the commissions, etc., an estoppel upon the plaintiff's right of recovery. Mere knowledge upon the part of the plaintiff of such wrongful act, unless it by some act or conduct consented to and ratified such wrongful act, would not defeat a recovery. Plaintiff may have acquired knowledge after the pledge to the Park National Bank that some of the loan was being misappropriated, yet unless it assented to such misappropriation, it had the right to rely upon the integrity

of Hayes & Sons to make good any wrongful appropriation of the funds, and that they would do so in strict accordance with their duty as defined by the terms of the contract under which they accepted the bonds. The law upon this subject was fully covered in the instructions given by the court upon the subject of waiver, and properly confined the knowledge acquired by the plaintiff as to the improper use of the bonds and appropriation of the funds secured by them to such knowledge as was acquired through Sebastian. That was the only information to which the testimony was applicable. There was no substantial testimony as to the ratification of the pledging of the bonds to the Park National Bank and the appropriation of the funds secured thereby upon which to predicate an instruction along that line; therefore, the issue upon which there was a conflict of testimony, as to the knowledge of Sebastian at the time of the pledge of the bonds to Park National Bank as to the uses to which the funds were to be applied, was properly submitted to the jury, and that issue was found against the defendant by the jury, and we are unwilling to retry it upon the facts disclosed by the record.

Instruction numbered 6 requested by defendant as to the right of the defendant in this cause to set off against the plaintiff's claim the amount of reasonable compensation of Alexander for work actually done by him upon this railway, was properly denied. There is no privity between the defendant or Hayes & Sons and the plaintiff as to the work actually done by Alexander. There is an entire absence of any testimony showing any assignment of any claim that Alexander may have against the plaintiff for the doing of such work. The agreements introduced in evidence by defendant, of February 19, 1901, fall far short of constituting any assignment of any claim by Alexander for compensation for work done. They amount to nothing more nor less than a personal agreement to pay

Hayes & Sons certain amounts for their guaranty of the loan. Alexander's contract for the completion of the work upon the electric railway was cancelled, and any claim that he might have for work actually done must be a claim originating entirely independent of the contract, and it is apparent that the agreements introduced in evidence were made in contemplation of the completion of the work under the terms of the contract, and by no sort of construction can these agreements be made to meet the requirements of an assignment of the claim which is independent of the contract. It will be observed by the terms of the agreement of Alexander to pay W. J. Hayes & Sons or Harry E. Hayes for their guaranty of the loan, that his payment was not necessarily to be a part of the fifteen per cent which Alexander was to receive from the plaintiff in the event of the completion of the work, but a plain agreement to pay a certain per cent on all sums above eighty thousand dollars, on which Alexander would receive fifteen per cent. To entitle the defendant to recover upon any claim which may exist in behalf of Alexander for work actually done in the construction of the railway, there must be something in the nature of a contract assigning such claim to the defendant, and it is clear that no assignment of any such claim was contemplated by the instrument referred to, for the reason that at the time of the execution of such instrument it was never in contemplation that such conditions would arise; therefore, the court very properly denied the request for instruction numbered 6, and correctly declared the law that defendant is not entitled to claim any benefit or commissions whatever for the work which was actually done by Alexander prior to the cancellation of his contract by the plaintiff.

We have carefully considered and analyzed the instructions given by the court in this cause, and have reached the conclusion that they fairly and fully de-

clare the law as applicable to the issues presented by the pleadings and evidence developed at the trial.

It is earnestly insisted by appellant that the payment made by the plaintiff for the redemption of the bonds to the Park National Bank was entirely volun, tary, and that there is an absence of any proof as to any compulsion in the payment of the sums of money for the redemption of the bonds or as to any legal obligation to pay such sums for their redemption, and that the declaration of law by the court upon this subject, particularly the supplemental instruction given, was erroneous. Compulsory payment, in order to be made the basis of a right of action, may consist of different classes or characters of compulsion.    First, it may be such a payment as was made necessary by the law, or as may arise from a legal duty to make the payment or it may be such compulsion as would arise from a failure to pay, which would subject the plaintiff legally to substantial loss. If a party in order to protect his interest and rights in property makes a payment although not compelled by any legal force to make it, yet the failure to make it would result in the substantial loss of the rights and interests of the party to the property, this, in legal contemplation, would be nothing less than a compulsory payment. A payment made to protect the interests and rights of this plaintiff in the bonds of the Mississippi Valley Transit Company, falls far short of a voluntary payment. The situation simply confronted the plaintiff to redeem the bonds or be deprived of any security for the work performed prior to the making of the Alexander contract and any work which might be done after the cancellation of that contract. The plaintiff, in order to protect its securities, redeemed the bonds, and under the law this was not a voluntary payment in the sense so ably and earnestly argued by the appellant, and it is apparent that this is the character or class of compulsion meant by the court in its declaration of law in the use of the terms

"compelled or obliged to pay to the bank by reason of the pledge in order to protect the bonds from sale under the pledge." It was not error for the court, at the request of the jury, to give the additional instruction complained of by appellant. This instruction referred the jury to the former instructions as a guide and substantially and correctly pointed out to them the proper measure of damages, in the event their finding should be for the plaintiff. The former instructions referred to in this supplemental instruction substantially told the jury as to what the wrong and injury consisted of in the pledging of the bonds by the defendant, and this instruction simply said in addition that "if you find that plaintiff did not know of the terms of the pledge, arrangements for payment of commissions and charges as were fully explained in former instructions, you should return a verdict for plaintiff for the amount of the difference between the amount of money that was used in the construction of the road and the amount paid by plaintiff to redeem the bonds;" then, it proceeded to declare the reverse of that proposition, that "if plaintiff did know of the arrangement to pay commissions and charges and assented thereto, as formerly explained, then the jury should deduct the amount of the charges and commissions from the sum which plaintiff paid over and above the amount that went into the construction of the road." Defendant insists that this additional instruction was erroneous for the reason that it eliminated the necessity of a finding by the jury that the payment of this sum was by legal compulsion. We are of the opinion that the character of compulsion of payment insisted upon by appellant was rightfully eliminated by this instruction. If the plaintiff was injured by the wrong of the appellant in this bond transaction, and in order to protect the bonds as security for material furnished and labor performed and to be furnished and performed, it was required to pay a sum of money over and above the amount which

went into the actual construction of this work upon the railway, we find no objection to an instruction which plainly tells the jury that under these circumstances the recovery should be measured by the difference between the amount actually paid for the redemption of the bonds and the amount that went into the actual construction of work upon the railway. There was no error in this supplemental instruction.

Appellant complains of the admission of incompetent and irrelevant evidence. It is insisted that the court erred in the admission of the stipulation as to the testimony in the Cleveland case between Hayes and Alexander. While it may be said that the stipulation as between counsel as to this testimony is not as definite and certain as is ordinarily required, yet the record clearly discloses that the suggestion of the use of this testimony was first made by counsel for the defendant and agreed to by plaintiff's counsel, with the understanding that objections as to its relevancy and materiality might be made. If the testimony as introduced was relevant we are of the opinion that the defendant's counsel is in no position to complain of the introduction of the stipulation. The testimony offered in this stipulation as to the value of the work prior to the making of the contract with Alexander by the plaintiff, as well as the amount of work subsequent to the cancellation of that contract, was clearly competent and relevant to the issues presented in this trial. This testimony was highly important to show the interests and rights of the plaintiff in the securities redeemed from the Park National Bank. These bonds were to be held as security for the work performed and to be performed; therefore, it was material to show the amount of interest that the plaintiff had in protecting its securities. It was apparent that unless there were certain rights and interests to be protected by the plaintiff, then the redemption of the

bonds would have been, as argued by defendant, purely voluntary.

There was no error in the admission of the telegram of July 9, 1901. The record discloses a sufficient foundation for the introduction of that telegram. W. J. Hayes & Sons and H. W. Sebastian were in correspondence both by telegram and letter as to these bonds. Mr. Sebastian states in his testimony that he had received telegrams signed with the initals "W. J. H. & Sons" and sometimes "H. E. Hayes," and taking the entire record, we are of the opinion that the introduction of this telegram was not prejudicial to the rights of the defendant. The same may be said as to the letter of May 23, 1901, addressed to W. J. Hayes & Sons by William Sebastian. Mr. Sebastian did not have in his possession the original letter as mailed to W. J. Hayes and Sons, and a copy of the letter as sent them was introduced. He testified that the letter as introduced was a copy of the letter deposited in the mail for W. J. Hayes & Sons. He further testified that he received an answer to this letter. There was no error in the admission of the copy of this letter, in view of the fact this his testimony discloses that he received an answer to the letter of which the one introduced in evidence was a copy.

Finally it is insisted by appellant that the contracts involved in this controversy are controlled and governed by the laws of Ohio, and that this proceeding must be measured by the laws of that State, and that the contract of W. J. Hayes & Sons was joint and that the judgment in this proceeding against an individual member of the firm was improper, and cannot be supported. This contention of the defendant cannot be maintained. In the first place, this action is not one based upon the contract, and while the duties of W. J. Hayes & Sons and each particular member of that firm in respect to their conduct and action as to the securities deposited with them were clearly defined by con-

tract, this action is one sounding in tort. In other words, it was the commission of a wrong by Hayes & Sons in disregarding the duties in respect to the disposition and management of the securities deposited with them for a particular purpose. It was in the nature of a wrongful conversion of the bonds deposited with them by the plaintiff and a misappropriation of funds realized from such bonds which resulted in injury and wrong to the plaintiff, for which it has a right of action for damages occasioned by such misconduct. This being true, all of the partners in the firm of W. J. Hayes & Sons were joint tortfeasors and may be held jointly and severally liable for wrongful acts committed by them. It may also be added that the record discloses in this cause that plaintiff discontinued its action as to the parties not served. Defendant submitted himself to the jurisdiction of the court in this proceeding, filed his answer to the merits, undertaking by it to litigate a claim against the plaintiff, without making a single objection during the progress of the trial to the proceeding against him individually. Even though this contention was full of merit, its force is certainly very much weakened by the continued silence of the defendant during the progress of the proceeding. This judgment will not be disturbed on that ground.

In conclusion, appellant insists that the verdict in this cause was excessive, and, that if plaintiff was entitled to recover at all, the recovery should be simply for the sum of about six thousand dollars, being the amount paid to the defendant out of the sums procured by the pledgee of the bonds. This is, by no means, to be taken as a measure of recovery to which plaintiff is entitled.. This was purely a business transaction. These bonds were accepted by W. J. Hayes & Sons under a plain unambiguous agreement that they would be held in accordance with the contract between plaintiff

191 Sup—20

and Walter Alexander. The only sums of money for which these bonds were liable to liens as against plaintiff was for such sums as were actually appropriated to the furnishing of material and labor in the construction of the railway. The plain duty of W. J. Hayes & Sons under the evidence in this cause was to furnish funds for material and labor to Alexander for the construction of the railway, and to hold such bonds as security for their loans and advancements along that line, and the very moment they permitted these bonds to leave their possession and the funds realized by reason of any pledging of them appropriated to a purpose not authorized by the contract, they were guilty of a wrongful act, and it makes no difference whether or not they received any of the proceeds of the loan secured by the pledge, the violation of their duty in respect to the holding of the bonds was a perpetration of a wrong which resulted in the injury to plaintiff and for which plaintiff is justly entitled to recover the damages sustained. There was absolutely no authority to make these bonds a security to W. J. Hayes & Sons for any obligation due from Alexander to them for securing the loan. That was a personal transaction between Alexander and Hayes & Sons in which the plaintiff had no concern, and for which these bonds could not be held as security. It may be that this transaction may result in a hardship imposed upon the defendant, the occasion of which must not be attributed to the law, but rather to the failure to insert proper safeguards in the contract to which he voluntarily became a party. Any other conclusion reached upon the disclosures of the record now before us, would not only be an absolute disregard of the plain terms employed in the contract, but would, as well, be at total variance from the preservation of the principle of fair dealing and business integrity.

It may not be inappropriate to say that learned counsel for appellant have said all that can be urged in

support of their views on this business transaction. We have read with care and interest their presentation of the questions as contained in the brief, as well as the authorities therein cited. The reasonable limits of this opinion must be our apology for failure to review the authorities relied upon by appellant. We have read them and it must suffice to say that they in no way conflict with the conclusions reached upon the legal propositions disclosed by the record in this cause.

The judgment of the trial court was for the right party, and finding no reversible error in the record, the judgment should be affirmed, and it is so ordered.

All concur.